IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JEFFREY FILES,
      Petitioner,

vs.                              Case No.:  3:09cv490/RV/EMT

KENNETH S. TUCKER,[1]
      Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (docs. 25, 26, 27).  Petitioner filed a reply (doc. 32).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 25).[2]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, with one count of attempted first degree premeditated murder with a firearm (Count I) and

---

[1] Kenneth S. Tucker succeeded Edwin G. Buss, who succeeded Walter A. McNeil, as Secretary for the Department of Corrections.  Secretary Tucker is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (docs. 25, 26, 27).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

one count of burglary of a dwelling while armed with explosives or a dangerous weapon (Count II) (Ex. B at 1).  Following a jury trial on January 24–28, 2005, he was found guilty as charged (*id.* at 68–71).  On March 4, 2005, Petitioner was adjudicated guilty and sentenced to concurrent terms of thirty (30) years of imprisonment on each count, with a twenty-five (25) year mandatory minimum, followed by a ten-year term of probation, with presentence credit of 306 days (*id.* at 76–116, 128–32).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D05-1797 (Exs. D, E, F).  The First DCA affirmed the judgment per curiam without written opinion on August 31, 2006 (Ex. G).  Files v. State, 937 So. 2d 125 (Fla. 1st DCA 2006) (Table).  Petitioner did not seek further review.

On September 27, 2006, Petitioner filed a motion for reduction or modification of sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. I).  The state circuit court denied the motion (Ex. J).

On March 13, 2007, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. K).  Petitioner subsequently filed a notice of voluntary dismissal, and the case was dismissed on July 5, 2007 (Exs. L, M).

On August 7, 2007, Petitioner filed a second Rule 3.850 motion (Ex. N at 1–44).  The state circuit court summarily denied the motion (*id.* at 61–81).  Petitioner appealed the decision to the First DCA, Case No. 1D08-5601 (Exs. O, P).  The First DCA affirmed the decision per curiam without written opinion on July 30, 2009, with the mandate issuing September 30, 2009 (Exs. Q, S). Files v. State, 16 So. 3d 822 (Fla. 1st DCA 2009) (Table).

Petitioner filed the instant federal habeas action on October 29, 2009 (doc. 1).  Respondent concedes the habeas petition is timely (doc. 25 at 3–4).

II.      SUMMARY OF TRIAL EVIDENCE

Petitioner was accused of breaking into the home of his former girlfriend, Sandy Shigley, and shooting her at approximately 11:45 p.m. on the night of April 30, 2004.  Ms. Shigley suffered seven gunshot wounds from a .22 caliber handgun (Ex. C at 327–28, 635–43).  She was hospitalized for five to six weeks, and she underwent three surgeries, resulting in the removal of one of her kidneys, her spleen, both ovaries, her appendix, her uterus, and a large section of her small intestine,

and required a colostomy bag for five months (*id.*). Ms. Shigley testified she and Petitioner dated for 2 1/2 years, they had lived together part of that time, they had broken up just two months prior to the shooting, and she and her daughter were living with Petitioner in his home at the time of the break-up (*id.* at 274–332). She testified she initiated the break-up of their relationship, but Petitioner initiated her leaving his home and moving to another home (*id.*). Ms. Shigley unequivocally testified Petitioner was the person who shot her on the night of April 30, 2004 (*id.*). Additionally, she identified Petitioner by name and address to persons who responded to the scene immediately after the shooting (*id.*). Ms. Shigley testified that prior to shooting her, Petitioner repeated a comment she had made to a mutual friend regarding their break-up (*id.*). Ms. Shigley also testified that approximately two weeks prior to the shooting, Petitioner held her at gunpoint and threatened to kill her (*id.*). Ms. Shigley's neighbor testified that between 11:30 p.m. and midnight on April 30, 2004, he heard gun shots and observed a light metallic blue or silver "small SUV, like a Jeep" leave the vacant lot next to Ms. Shigley's home (*id.* at 143–50). Approximately two hours after the shooting, law enforcement found Petitioner and his abandoned silver/gray Jeep on an interstate in a neighboring county (*id.* at 228–35, 253–56). He had $600.00 in his pocket (*id.*). Forensic evidence showed that glass recovered from Petitioner's shirt and the soles of his shoes was similar to the glass from Ms. Shigley's front door, which was broken during the shooting (*id.* at 568–83, 644–56). Also, tire tracks and shoe prints at the scene were consistent with the tires on Petitioner's Jeep and the shoes he was wearing that night (*id.* at 202–05, 211–12, 644–56). Witnesses testified that Petitioner was in possession of a semiautomatic pistol prior to the shooting, which had been given to him by his father and was never recovered (*id.* at 407–12). A .22 caliber shotgun shell was discovered in Petitioner's home (*id.* at 791).

Petitioner presented an alibi defense. He presented testimony from friends that he was with them at local bars until approximately midnight on April 30, 2004. He posited that Ms. Shigley mistakenly identified him as the shooter.

III.   STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable

application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  See Gill, 2010 WL 609844, at *18.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision.  Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

IV.     EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the

---

[4]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
      (A)  the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i)  there is an absence of available State corrective process; or
         (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

        Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by

_____

        [5] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in <u>McNair v. Campbell</u>, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  <u>McNair</u> [<u>v. Campbell</u>], 315 F. Supp. 2d at 1184 (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement.  After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach.  For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and

___

[6] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and

expressly state it is relying on state procedural rules to resolve the federal claim.[7]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

V.      PETITIONER'S CLAIMS

A.      Ground One:  "Petitioner was denied his right to due process as is guaranteed by the Fifth and Fourteenth Amendment [sic] of the United States Constitution when the State trial

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

court sustained the prosecutor's objection to defense counsel's closing argument in regard to the credibility to [sic] alibi witness Keith Scott."

Petitioner alleges the trial court erred by sustaining the prosecutor's objection to the following comments by defense counsel during closing argument:

> That is reasonable that he [Keith Scott, one of the alibi witnesses] looked at his watch at that point in time and that is why, ladies and gentleman, his testimony is credible regardless of the fact that he didn't remember if it was April 30th or May 1st.  It's credible because the facts of his testimony did not waiver [sic] because if they had waivered [sic], Mr. Simon [the prosecutor] would have taken that deposition and just run with it.  So his testimony was consistent.

(doc. 1 at 4–6).  Petitioner contends the fact that Mr. Scott had been deposed had been brought out by the prosecutor during cross-examination (*id.*).  Petitioner asserts defense counsel's argument that Mr. Scott's trial testimony was credible was simply drawing a reasonable inference from the evidence (*id.*).  Petitioner contends the trial court's ruling deprived him of a meaningful opportunity to present his alibi defense, because the credibility of the alibi witnesses was crucial (*id.*).  He contends he raised this claim on direct appeal (*id.* at 6).

Respondent contends Petitioner failed to present the federal nature of his claim to the state courts (doc. 25 at 6–9, 12–13).  Respondent asserts Petitioner argued trial court error in his initial brief on direct appeal, but he argued the issue as purely a state law issue and did not even mention a federal basis for the claim (*id.*).  Respondent contends Petitioner cannot return to state court to raise a federal claim; therefore, it is procedurally defaulted for federal habeas purposes (*id.* at 9–10, 12–13).

In Petitioner's appellate brief, he argued the trial court abused its discretion by sustaining the prosecutor's objection (Ex. D).  He argued the trial court's error impugned the defense's effort to get the jury to believe his alibi, and there was a reasonable possibility the jury would have had reasonable doubt as to his guilt had the trial court not sustained the prosecutor's objection (*id.*).  Petitioner did not label his claim "federal," nor did he mention in conjunction with his claim a federal source of law on which he relied (*id.*).  Further, although one of the state cases Petitioner cited, Goodrich v. State, 854 So. 2d 663 (Fla. 3d DCA 2003), was decided on federal grounds, the federal cases cited by the Goodrich court involved the Sixth Amendment right to the assistance of counsel, not the Fifth Amendment right to due process, which is the federal right Petitioner asserts

in Ground One of the instant petition (*see* doc. 1 at 4).   *See* <u>Goodrich</u>, 854 So. 2d at 665 (citing <u>Herring v. New York</u>, 422 U.S. 853, 862, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975) and <u>United States v. Kellington</u>, 217 F.3d 1084, 1100 (9th Cir. 2000)).   The undersigned therefore concludes Petitioner did not fairly present a federal due process claim to the state courts.

Furthermore, any future attempt to exhaust state remedies would be futile under Florida law. Petitioner may not take a second appeal of his conviction.   Additionally, because Petitioner could have and should have raised any federal claim associated with the alleged trial court error in his direct appeal, Florida procedural rules bar the claim from being raised in a state post-conviction motion.   *See* Fla. R. Crim. P. 3.850(c).   Therefore, Ground One is procedurally defaulted.   *See* <u>Bailey</u>, 172 F.3d at 1303.   As previously noted, a procedural default may be excused through a showing of cause for the default and prejudice arising therefrom, *see* <u>Coleman</u>, 501 U.S. at 750, or a demonstration that failure to consider the claim will result in a "fundamental miscarriage of justice," *see* <u>Murray</u>, 477 U.S. at 495–96.   In the instant case, Petitioner does not allege cause for his failure to fairly present his federal claim in the state courts.   Furthermore, he has not alleged the existence of new reliable evidence demonstrating he is actually innocent (that is, factually innocent) of the charges.   Therefore, he has failed to show that this court's failure to review his claim will result in a fundamental miscarriage of justice.   *See* <u>Schlup</u>, 513 U.S. at 327.   For these reasons, Petitioner is not entitled to federal review of Ground One.[8]

     B.    <u>Ground Two:  "Petitioner was denied his U.S. Constitutional rights to effective assistance of counsel, equal protection, due process, and a fair trial by trial counsel's failure to object to the State improperly commenting on Petitioner's post-arrest silence."</u>

Petitioner contends defense counsel performed ineffectively by failing to object to the prosecutor's questioning of three witnesses (the victim, Petitioner's mother, and one of Petitioner's former girlfriends) as to whether Petitioner "ever" told them he had disposed of a gun he was known to possess (the gun which the State theorized was the gun used in the shooting) (doc. 1 at 6). Petitioner further contends defense counsel should have objected to the prosecutor's comments during closing argument, that Petitioner never told any of these witnesses he disposed of the gun

---

    [8]   Even if Petitioner's appellate brief fairly presented a federal due process claim, Petitioner failed to demonstrate that the First DCA's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law, for the reasons set forth in Respondent's answer (*see* doc. 25 at 13–14).

(*id.*).  Petitioner contends the prosecutor's "carefully structuring" his questions and comments to include both pre-arrest and post-arrest time periods was an improper comment on his post-arrest silence (*id.*).  Petitioner states he raised this claim in his Rule 3.850 motion (*id.*).

Respondent argues that to the extent Petitioner raises a federal equal protection or due process claim, it was not fairly presented to the state court (doc. 25 at 6–10).  Respondent contends Petitioner raised only claims of ineffective assistance of counsel in his Rule 3.850 motion (*id.*).  Therefore, Petitioner's due process and equal protection claims asserted in Grounds Two through Twenty-three of the instant federal petition are not exhausted (*id.*).  Respondent contends state procedural rules prohibit Petitioner from returning to state court to present his claims in another Rule 3.850 motion; therefore, the due process and equal protection claims are procedurally barred from federal review (*id.* at 9–10).  With respect to the ineffective assistance of counsel claims asserted in Grounds Two through Twenty-three, Respondent concedes those claims were exhausted (*id.* at 6).  Respondent contends Petitioner failed to demonstrate he is entitled to federal habeas relief on any of his ineffective assistance of counsel claims (doc. 19 at 4–6, 19–64).

To the extent Petitioner raises due process and equal protection claims in Grounds Two through Twenty-three, independent of his claims of ineffective assistance of counsel, the claims are not exhausted, because he did not fairly present independent claims of due process and equal protection violations in his Rule 3.850 motion (*see* Ex. N at 1–44).  Further, Florida procedural rules prohibit Petitioner from returning to state court to present his claims in another Rule 3.850 motion.  Moreover, Petitioner has not shown he is entitled to federal review through any recognized exception to the procedural bar.  Therefore, the due process and equal protection claims asserted in Grounds Two through Twenty-three are procedurally barred from federal review.  Consequently, only the ineffective assistance of counsel claims asserted in Grounds Two through Twenty-three will be reviewed.

1. Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  *Id.* at 687–88.  If

Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do.'" Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not,

or prove by a preponderance of evidence," that counsel's errors affected the outcome.  <u>Strickland</u>, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in <u>Strickland</u> for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  <u>Williams v. Taylor</u>, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncrasies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. <u>Strickland</u>, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.  Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), <u>Strickland</u> prejudice is gauged against the outcome of the trial, not on appeal.  *See* <u>Purvis v. Crosby</u>, 451 F.3d 734, 739 (11th Cir. 2006) (citing <u>Strickland</u>, 466 U.S. at 694–95).

## 2.  Federal Review of State Court Decision

Petitioner raised this claim as Ground I in his Rule 3.850 motion (Ex. N at 5–15).  The state circuit court correctly applied the <u>Strickland</u> standard in adjudicating all of Petitioner's ineffective assistance of counsel claims (*id.* at 63–64).  As to this particular claim, the court determined that while comments on a defendant's post-arrest silence are improper as they pertain to a defendant's right to remain silent under questioning by law enforcement, these protections do not extend to statements made or not made to friends and family not acting under the purview of law enforcement (*id.* at 64).  The court therefore concluded Petitioner failed to show deficient performance based upon defense counsel's failure to object to the prosecutor's questions and comments (*id.*).

Petitioner appealed the state circuit court's decision to the First DCA.  The appellate court affirmed per curiam without written opinion.  As previously discussed, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* <u>Gill</u>,

633 F.3d at 1287 (citing <u>Harrington</u>, 131 S. Ct. at 786).  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* <u>Harrington</u>, 131 S. Ct. at 786; *see also* <u>Gill</u>, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

In <u>Doyle v. Ohio</u>, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), the Supreme Court held that a prosecutor's use of a defendant's post-arrest silence to impeach the defendant's exculpatory story, told for the first time at trial, violates the due process clause of the Fourteenth Amendment.  However, the "silence" at issue must be occasioned as an exercise of the right to remain silent during a custodial interrogation.  *See* <u>United States v. Venditti</u>, 533 F.2d 217, 220 (5th Cir. 1976) (prosecutor did not improperly comment on defendant's silence at the time he discussed tax records with accountant, because the " silence" at issue was not occasioned as an exercise of the right to remain silent during custody).[9]  In the instant case, the "silence" which was the subject of the prosecutor's questions to the victim, Petitioner's mother, and Petitioner's former girlfriend  was not occasioned as an exercise of Petitioner right to remain silent during a custodial interrogation. Consequently, defense counsel had no meritorious basis for objecting to the prosecutor's questions or closing argument as an improper comment on Petitioner's post-arrest silence.  Petitioner has therefore failed to establish that the state court's adjudication of this claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of <u>Strickland</u>.

C.      <u>Ground Three:  "Petitioner was denied his U.S. Constitutional rights to effective assistance of counsel, equal protection, due process, and a fair trial by trial counsel's failure to object to the State improperly commenting on Petitioner's failure to testify at trial."</u>

---

[9] Decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981 are binding as precedent on the Eleventh Circuit.  <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981).

Ground Seventeen:  "Petitioner was denied his U.S. Constitutional rights to effective assistance of counsel, equal protection, due process, and a fair trial by trial counsel's failure to object to the State commenting on defense's failure to present evidence."

Petitioner asserts the prosecutor's repeated rhetorical questions during closing argument, "Where's the gun?" and the prosecutor's rhetorically asking why the defense did not address certain evidence violated his right to refrain from testifying and improperly shifted the burden of proof to the defense (doc. 1 at 7–9, 25–27).  Petitioner contends defense counsel was ineffective for failing to object to the prosecutor's allegedly improper comments (*id.*).

Petitioner raised this claim in Grounds II and XVI of his Rule 3.850 motion (Ex. N at 5–8, 30–33).  The state circuit court adjudicated the claims as follows:

> Prosecutorial comment upon a general lack of defense evidence is permissible.  See Helton v. State, 424 So. 2d 137, 138 (Fla. 1st DCA 1982).  A prosecutor may comment on the uncontradicted or uncontroverted nature of the evidence and may point out that there is an absence of evidence on a certain issue during closing argument to the jury.  Smiley v. State, 395 So. 2d 235, 237 (Fla. 1st DCA 1981).  The Court does not find persuasive Defendant's argument that "only he could have answered" the question as to where the gun would be found.  For example, if the gun were given away, the person to whom it was given might have been called to testify to such.  Furthermore, the Court finds that the comment that "at least he—Mr. Wilkins (defense counsel)—did not explain it" was not an impermissible comment on Defendant's failure to testify, but rather a response to defense counsel's closing argument.  As to Defendant's assertion that the State impermissibly commented on his failure to present evidence, it appears to this Court that the State's comments regarding the gun can be reasonably construed as commentary on its own evidence—i.e., those witnesses whom the State called to demonstrate that Defendant possessed a handgun, and to their knowledge, he had not gotten rid of it.  Taking the arguments of both counsel as a whole, the Court concludes that the comments by the State were made in response to the argument of defense counsel or were appropriate comment on the evidence presented.  Lastly, even were this not the case, Defendant has additionally failed to demonstrate a reasonable probability that the outcome of the proceedings would have been different had counsel objected to these statements.  Defendant is not entitled to relief on the basis of his second and sixteenth claims.

(Ex. N at 65–66) (footnotes omitted).

The Fifth Amendment prohibits commenting on the defendant's  silence at trial and asking the jury to draw an adverse inference from that silence.  *See* United States v. Robinson, 485 U.S. 25,

32, 108 S. Ct. 864, 99 L. Ed. 2d 23 (1988); <u>Griffin v. California</u>, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965).

> The Fifth Amendment prohibits a prosecutor from commenting directly or indirectly on a defendant's failure to testify.  A prosecutor's statement violates the defendant's right to remain silent if either (1) the statement was manifestly intended to be a comment on the defendant's failure to testify, or (2) the statement was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.  The question is not whether the jury possibly or even probably would view the remark in this manner, but whether the jury necessarily would have done so.

<u>United States v. Blankenship</u>, 382 F.3d 1110, 1128 (11th Cir. 2004) (quoting <u>United States v. Knowles</u>, 66 F.3d 1146, 1162–63 (11th Cir. 1995)).

Ineffective assistance of counsel may be established where defense counsel fails to object to the prosecutor's arguments which invite the jury to consider constitutionally protected silence as evidence of the defendant's guilt, *see* <u>Fugate v. Head</u>, 261 F.3d 1206, 1223 (11th Cir. 2001), arguments which voice a personal opinion based upon evidence that was not presented to the jury, *see* <u>United States v. Granville</u>, 716 F.2d 819, 822 (11th Cir. 1983), or arguments which shift the burden of proof to the defense, *see* <u>United States v. Simon</u>, 964 F.2d 1082, 1086 (11th Cir. 1992).  To determine whether the prosecutor intended to comment on Petitioner's failure to testify, the comments must be examined in context.  *See* <u>United States v. Young</u>, 470 U.S. 1, 11, 105 S. Ct. 1039, 1044, (1985); <u>Baxter v. Thomas</u>, 45 F.3d 1501, 1508 (11th Cir. 1995) (quotations and citation omitted).  If the prosecutor's remarks were "invited," and did no more than respond substantially in order to "right the scale," such comments would not warrant reversing a conviction.  *See* <u>Young</u>, 470 U.S. at 13.

Further, the prosecutor is not limited to a bare recitation of the facts; he may comment on the evidence and express the conclusions he contends the jury should draw from the evidence. <u>United States v. Johns</u>, 734 F.2d 657, 663 (11th Cir. 1984).  A prosecutor may comment on the uncontradicted or uncontroverted nature of the evidence and may point out that there is an absence of evidence on a certain issue during closing argument to the jury.  *See* <u>White v. State</u>, 377 So.2d 1149 (Fla. 1980).  Additionally, prosecutorial comment upon a general lack of defense evidence is permissible.  *See* <u>Smiley v. State</u>, 395 So.2d 235 (Fla. 1st DCA 1981).

Reviewing the prosecutor's comments in the context of the entirety of the parties' closing arguments, the undersigned concludes Petitioner failed to show that defense counsel's failure to object to the prosecutor's comments was unreasonable.  The prosecutor's rhetorical questions regarding the location of Petitioner's handgun were proper comments on the evidence that Petitioner owned a handgun that he kept in his home (Ex. C at 279–81, 294, 409, 412, 416–17), the victim was shot by a handgun (*id.* at 310–23), Petitioner was arrested attempting to flee the jurisdiction three hours after the shooting (*id.* at 254, 256–57, 231–33, 236, 238), and Petitioner's handgun could not be located (*id.* at 704).  Likewise, the prosecutor's comments regarding the defense's inability to explain Petitioner's statements to the victim at the time of the shooting[10] and failure to  address the evidence of a tire track found at the house next door to the victim's, cannot reasonably be construed as intended to comment on Petitioner's failure to testify, nor did the comments improperly shift the burden of proof to the defense.  *See* Duncan v. Stynchcombe, 704 F.2d 1213, 1215–16 (11th Cir. 1983) (a comment on the failure of the defense, as opposed to that of the defendant, to counter or explain testimony presented or evidence introduced is not an infringement of the defendant's Fifth Amendment privilege).  Indeed, the prosecutor's comments concerning the defense's failure to address or explain certain evidence (for example, Petitioner's statement to the victim and the tire track) were permissible responses to defense counsel's argument as to what certain pieces of evidence showed and did not show, the absence of evidence on certain issues, and the State's failure to produce evidence proving Petitioner's guilt beyond a reasonable doubt (*see* Ex. C at 1236–70 ).

Furthermore, the prosecutor reminded the jury that before they could find Petitioner guilty, the State was required to prove the elements of the crimes beyond a reasonable doubt (Ex. C at 1210), and defense counsel reminded the jury that the State bore the burden of proof (*id.* at 1269–70), thus dispelling any suggestion that Petitioner was required to present any evidence or bear any burden of proof.  Moreover, the trial court cured any suggestion that anyone but the State had the burden of proof by clearly instructing the jury on the following points:  (1) to convict Petitioner, the State was required to prove the elements of each crime beyond a reasonable doubt, (2) Petitioner

---

[10] As evidence of the shooter's identity, the State introduced the victim's testimony that when Petitioner shot her, he related back comments she had made to mutual friends.

was not required to present evidence or prove anything, (3) if the jury had a reasonable doubt as to whether Petitioner committed the offenses, they should find him not guilty, (4) a reasonable doubt as to guilt could arise from the evidence, conflict in the evidence, or lack of evidence, and (5) it was the jury's duty to decide what evidence was reliable (*id.* at 1290–05). *See* Simon, 964 F.2d at 1087 (although prosecutor's remarks were probably improper, the district court rendered any error harmless by the repeated instructions to the jury that the defendant had no burden to produce any evidence); Duncan, 704 F.2d at 1216 (prosecutor's comment on the failure of the defense to counter or explain the testimony presented or evidence introduced did not shift burden of proof to the defendant, because any possible prejudice which might otherwise have resulted from the comments was cured by the court's instructions regarding the burden of proof).

Petitioner failed to show that defense counsel's failure to object to the prosecutor's comments constituted deficient performance. Therefore, the state court's adjudication of Petitioner's claims was not an unreasonable application of Strickland.

> D.    Ground Four:  "Petitioner was denied his U.S. Constitutional rights to effective assistance of counsel, equal protection, due process, and a fair trial by trial counsel's failure to object to inaccurate statements made by the State during closing argument."

Petitioner contends the prosecutor misstated the evidence when he stated the following during closing argument:

> The defense has argued that Ms. Shigley is mistaken. There is one thing I believe they will not be able to explain to you. Remember that statement in the house when he first comes in and he says, So Jeff is taking it hard, huh? That is a very important statement. This is why. Ms. Shigley says that at La Hacienda two days before she saw Bernadette Taylor and Tommy McVoy. She had a conversation with them when she was leaving and she told them specifically when they were talking, Jeff is taking it hard. Everybody remember that? That is what she said.

> Ms. Shigley had no idea that that statement had been communicated from Bernadette Taylor to Bill Reid to Jeff Files the night he shot her seven to eight times. I pulled in both those witnesses and they both confirmed it. Bernadette Taylor told Bill Reid and Bill Reid says I told Jeff Files that this took place. How would Ms Shigley know that that took place and they're saying that she is mistaken and she is wrong, how would she know they told him that statement and for her to tell police that is what she said or tell you today? How? They can't. They cannot explain it.

(doc. 1 at 10 (quoting Ex. C at 1229–30, emphasis added by Petitioner)).  Petitioner argues there was no evidence that Ms. Shigley told police about the statement (*id.*).  He argues the prosecutor's misstatement was "highly prejudicial," because the fact that Ms. Shigley did <u>not</u> tell deputies about the statement cast doubt on her testimony (*id.* at 10).  He asserts it is "logical to assume" that if the shooter had made the statement, Ms. Shigley would have told deputies she knew the shooter was Petitioner by virtue of the <u>statement</u>, because she told the deputies other identifying information, such as his name and address, and described his physical position during the shooting (*id.*).  Petitioner contends defense counsel's failure to object to the prosecutor's misstatement of the evidence was ineffective (*id.* at 9–11).

Petitioner raised this claim in Ground III of his Rule 3.850 motion (Ex. N at 8–10).  The state circuit court made several factual findings as to the evidence adduced at trial.  The court found that Ms. Shigley testified at trial that her assailant said to her, "So Jeff's having a hard time, is he . . . Life goes on, does it?" (*id.* at 66).  The court also found that the State offered testimony that, a few days prior to the incident, Ms. Shigley told a mutual acquaintance of her and Petitioner's, Bernadette Taylor, that Petitioner was taking the break-up of their relationship "hard" (*id.*).  The court found that testimony was offered that Bernadette Taylor relayed that information to another mutual friend, William (Bill) Reid, who then relayed it to Petitioner on the night of the shooting (*id.*).  The court found that the uncontested trial evidence showed that Ms. Shigley had known Petitioner for more than two years and had lived with him for some time (*id.* at 67).  The evidence also showed that Ms. Shigley was found to be severely injured upon the arrival of deputies and paramedics, but she positively identified Petitioner by name and address (*id.*).  Finally, the court found that the jury was instructed that closing statements are not evidence (*id.*).  The court found it illogical to conclude that Ms. Shigley should have offered every piece of pertinent information available to her as she lay bleeding from multiple gunshot wounds in her front yard (*id.*).  Based upon the foregoing, the court concluded Petitioner failed to demonstrate that defense counsel's failure to object was deficient or that an objection to the prosecutor's misstatement would have rendered a different result at trial (*id.* at 66–67).

The state court's factual findings are supported by the trial transcript.  Upon review of the trial testimony and the closing argument at issue, defense counsel's failure to object was not

unreasonable.  Ms. Shigley obviously told the prosecutor about her statement to Ms. Taylor and Mr. Reid and the shooter's statement, since the prosecutor introduced evidence of both statements at trial through the testimony of Ms. Taylor, Mr. Reid, and Ms. Shigley.  The prosecutor's misstatement did not have the effect of bolstering the victim's testimony.  Indeed, the effect of the prosecutor's misstatement was inconsequential.  Therefore, Petitioner failed to show the state court's adjudication of the claim was an unreasonable application of <u>Strickland</u>.

> E.      <u>Ground Five:  "Petitioner was denied his U.S. Constitutional rights to effective assistance of counsel, equal protection, due process, and a fair trial by trial counsel's failure to impeach by omission the testimony of Sandy Shigley."</u>

Petitioner asserts defense counsel should have impeached the victim, Ms. Shigley, with the fact that she did not tell deputies, either at the scene or in a interview with an investigator one week after the shooting, about the statement the shooter made just prior to shooting her, "So Jeff's having a hard time, huh?  Life goes on, huh?" (doc. 1 at 11–12).  Petitioner asserts Ms. Shigley "arguably" did not learn until after the shooting that Bernadette Taylor and Bill Reid told Petitioner that Ms. Shigley told them he (Petitioner) was having a hard time with their break-up but "life goes on" (*id.*).  Petitioner contends he was prejudiced by counsel's alleged error, because the defense theory was that Petitioner was not the shooter, and Ms. Shigley's testimony regarding the shooter's statement was crucial in identifying him as the shooter (*id.*).

Petitioner raised this claim as Ground IV in his Rule 3.850 motion (Ex. N at 10–12).  The state court found as fact that defense counsel's cross-examination of Ms. Shigley was vigorous and thorough  (*id.* at 68).  The court also found that there was little impeachment value in questioning Ms. Shigely about the omission in light the fact that the omission occurred when she was critically wounded and fighting for her life, and she unequivocally provided the deputies with the most important  identifying  information,  namely,  the  shooter's  name  and  address (*id.*).   The  court concluded Petitioner failed to show deficient performance or prejudice (*id.*).

The trial transcript demonstrates that defense counsel conducted a very thorough and rigorous cross-examination of the victim, attempting to cast doubt on her credibility (Ex. C at 332–95).  The transcript further demonstrates that Ms. Shigley unequivocally identified Petitioner by name and address to first responders at the scene of her shooting  (*id.* at 168, 172, 179, 190).  At

that time, Ms. Shigley was lying in critical condition, bleeding and in pain in her front yard with seven bullet wounds (*id.* at 167, 169, 189–90).  She spent five to six weeks in the hospital and underwent two surgeries (*id.* at 326–28).  The impeachment value of Ms. Shigley's failure to provide an additional identifying detail, either at the scene or during the first week of her five-week hospital stay, was minimal in light of her immediate, unequivocal identification of Petitioner by name and address.  The impeachment value is further eroded in light of the circumstances under which she immediately identified Petitioner—she identified him while under the stress of a startling event and/or the belief of impending death.  These circumstances render her identification inherently reliable, *see* Fla. R. Evid. 90.803(2) and 90.804(2)(b), and quite probative regarding the shooter's identity, regardless of whether additional details were provided at the same time.  Therefore, defense counsel's failure to question her about the omission was not unreasonable.  Additionally, Petitioner failed to show a reasonable probability of a different outcome at trial had counsel questioned Ms. Shigley as Petitioner suggests.  Consequently, the state court's conclusion, that Petitioner failed to show either deficient performance or prejudice, was not an unreasonable application of <u>Strickland</u>.

> F.      <u>Ground Six:  "Petitioner was denied his U.S. Constitutional rights to effective assistance of counsel, equal protection, due process, and a fair trial by trial counsel's failure to object to the State repeatedly using prior inconsistent statements as substantive evidence of guilt."</u>

Petitioner asserts during defense counsel's examination of defense witness William Reid, Mr. Reid testified that he left a bar at approximately 11:00 p.m. on the night of the shooting, and he "thought" Petitioner was with him when he walked to another bar, but he was not sure (doc. 1 at 12). On cross-examination, Mr. Reid admitted he previously told the prosecutor's office that Petitioner definitely was with him as he walked to the other bar (this prior statement was inconsistent with the testimony of the other alibi witnesses) (*id.* at 12–13).  Petitioner states during closing argument, the prosecutor argued the substance of Mr. Reid's prior statement as proof of the content of the statement, rather than for impeachment (*id.*).  Petitioner asserts this was "highly prejudicial," and defense counsel's failure to object and request a curative jury instruction was ineffective (*id.*).

Petitioner raised this claim as Ground V in his Rule 3.850 motion (Ex. N at 12–14).  The state court determined that the prosecutor was simply arguing the inconsistencies between what Mr. Reid said at trial and what he had previously testified to during his deposition (*id.* at 69).  The court

additionally determined that under state law, prior inconsistent statements are not hearsay and may be admitted as substantive evidence "'if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is . . . [i]consistent with the declarant's testimony and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding or in a deposition.'" (*id.* (quoting <u>Pearce v. State</u>, 880 So. 2d 561, 569 (Fla. 2004))). The state court therefore determined that Petitioner failed to demonstrate deficient performance on the part of counsel and further failed to demonstrate a reasonable probability that the outcome of trial would have been altered had counsel objected or requested a limiting instruction (*id.* at 69–70).

Initially, upon review of the trial transcript and the allegedly objectionable argument by the prosecutor, the undersigned concludes the prosecutor was using the inconsistency in Mr. Reid's statements to argue the lack of credibility of the alibi witnesses, including Mr. Reid (*see* Ex. C at 817–34, 1130–59). Additionally, this federal court must abide by the state court's interpretation of state law. *See* <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975). Therefore, this court is bound by the state court's determination that Florida law permitted the admission of Mr. Reid's prior inconsistent statement as substantive evidence. In light of this determination, counsel had no meritorious basis to object to the prosecutor's argument or request a limiting instruction. Therefore, Petitioner failed to establish the state court's adjudication of his claim was an unreasonable application of <u>Strickland</u>.

G.    <u>Ground Seven:  "Petitioner was denied his U.S. Constitutional rights to effective assistance of counsel, equal protection, due process, and a fair trial by trial counsel's failure to object to improper use of hearsay testimony of Ms. Shigley to bolster her trial testimony."</u>

Petitioner alleges defense counsel was ineffective for failing to object to the use of hearsay statements to bolster Ms. Shigley's testimony (doc. 1 at 14–15). Petitioner asserts the first hearsay statement occurred when Ms. Shigley testified to an incident in which she and Petitioner were arguing (*id.* at 14). Ms. Shigley testified she called a friend, who "could hear that he was angry" (*id.*). The second hearsay statement occurred when Ms. Shigley testified that on another occasion, Petitioner had "beat" on her door and subsequently pulled out a gun and threatened to kill her (*id.*).

Ms. Shigley testified she then went to pick up her daughter from the home of a friend named Wendy (*id.*).  Ms. Shigley testified she told Wendy she was sorry for being so late picking up her (Ms. Shigley's) daughter, that Petitioner had been to the house, they had a bad confrontation, and she was very upset and scared (*id.*).  The third and fourth hearsay statements occurred, Petitioner asserts, when the prosecutor asked Ms. Shigley whether she told her co-workers about the gun incident, and she testified she did tell her co-workers, and they thought she "needed to go get a restraining order." (*id.*).  Petitioner argues the hearsay statements improperly bolstered Ms. Shigley's testimony (*id.* at 15).  He additionally argues admission of the statements violated his right to confront the witnesses who made the statements (*id.*).

Petitioner raised this claim as Ground VI in his Rule 3.850 motion (Ex. N at 14–15).  The court concluded Petitioner failed to show the outcome of the proceeding would have been different had counsel objected to the statements (*id.* at 70–71).

As previously noted, defense counsel thoroughly and rigorously cross-examined Ms. Shigley in an attempt to cast doubt on her credibility; and counsel in fact used some of the hearsay statements as opportunities to discredit her testimony (Ex. C at 332–95).  In light of defense counsel's extremely thorough cross-examination and the overwhelming evidence of Petitioner's guilt, Petitioner failed to show a reasonable probability of a different outcome at trial if counsel had objected to the four portions of Ms. Shigely's testimony he describes as hearsay.

H.    Grounds Eight through Twelve: "Petitioner was denied his U.S. Constitutional rights to effective assistance of counsel, equal protection, due process, and a fair trial by trial counsel's failure to impeach Ms. Shigley with her prior inconsistent statements."

Petitioner contends defense counsel was ineffective for failing to point out several inconsistencies in Ms. Shigley's testimony, which are detailed *infra*. (doc. 1 at 15–19).  He contends he may have been acquitted if counsel had attacked Ms. Shigley's "credibility, memory, and veracity" by impeaching her with her prior inconsistent statements (*id.*).

Petitioner raised these claims as Grounds VII through XI in his Rule 3.850 motion (Ex. N at 15–21).  The state court found that defense counsel thoroughly cross-examined Ms. Shigley and vehemently argued in closing that she was mistaken in her identification of Petitioner (*id.*).  The court further found that the inconsistencies in Ms. Shigley's statements were minimal, and Petitioner

failed to demonstrate that further questioning of Ms. Shigley on these inconsistencies would have produced a different result at trial (*id.*).  The court concluded Petitioner failed to demonstrate either deficient performance or prejudice (*id.*).

The first inconsistency identified by Petitioner (in Ground Eight) was Ms. Shigley's testimony regarding a prior incident in which Petitioner held her at gunpoint and threatened to kill her (doc. 1 at 15–16).  Petitioner states Ms. Shigley testified at trial that she told her babysitter and co-workers about the incident; however, prior to trial, she told an investigator, ". . . big mistake, I should have told somebody" about the incident (*id.*).  Petitioner acknowledges defense counsel questioned her about the inconsistency as follows:

> Q.      . . . isn't it your testimony that you, in fact, told Investigator Orr that you did not tell anybody about the gun incident with Mr. Files?
>
> A.      No.  Because I did tell somebody.

 (*id.*).  Petitioner contends counsel should have gone further by impeaching her with her actual statement to Investigator Orr (*id.*).

Even if counsel had gone further by impeaching Ms. Shigley with her actual statement to Investigator Orr, it is evident from her trial testimony that she would have remained steadfast in her testimony that she told her co-workers about the incident.  Further, her statement to Orr was consistent with her trial testimony that she did not tell police about the gun incident despite her co-workers' encouraging her to do so (Ex. C at 300, 362).  In light of the arguable consistency of her statements and the availability of a reasonable explanation for any perceived inconsistency, defense counsel's failure to make further attempts to impeach her with her statement to Orr was not ineffective.

Another alleged inconsistency, identified by Petitioner in Ground Twelve, is Ms. Shigley's description of the length of time that Petitioner held her at gunpoint on an occasion prior to the shooting (doc. 1 at 19).  During trial, Ms. Shigley testified he held her at gunpoint for forty-five minutes; however, in her deposition, she described the duration as "at least a half hour" (*id.*).  These statements are not inconsistent.  Therefore, defense counsel was not deficient for failing to impeach her.

The remaining alleged inconsistencies (Grounds Nine, Ten, and Eleven) involve Ms. Shigley's testimony regarding details of the shooting.  First, Petitioner states Ms. Shigley testified she did not know Petitioner had a gun until he shot her; however, prior to trial, she told Investigator Orr she went in the kitchen, where she saw Petitioner and "he had the gun in his hand" (doc. 1 at 16).  Second, Petitioner states Ms. Shigley testified that Petitioner did not identify Bernadette Taylor as the source of Ms. Shigley's comments concerning the break-up of their relationship; but in her deposition, she stated Petitioner identified Ms. Taylor as the source (*id.* at 17).  Third, Petitioner states Ms. Shigley testified she was awakened by a "loud" noise or "boom"; however, in her statement to Investigator Orr, she stated she heard a "little" noise (*id.* at 18).

Considering Ms. Shigley's unequivocal identification of Petitioner as the shooter to first responders and law enforcement immediately after the shooting, her unequivocal trial testimony that Petitioner was the shooter, and the undisputed nature and duration of her relationship with Petitioner (they dated for 2 1/2 years, lived together during much of that time, and broke up just two months prior to the shooting), there is no reasonable probability that the jury would have had reasonable doubt as to whether Petitioner was the shooter if defense counsel had attempted to impeach Ms. Shigley on these subjects (i.e., the precise moment she became aware he had a gun, whether Petitioner identified Bernadette Taylor as the source of Ms. Shigley's comments about their break-up, and the volume of the noise she heard that caused her to go to the kitchen).  Therefore, Petitioner failed to demonstrate that the state court's denial of his claims of ineffectiveness as to counsel's cross-examination of Ms. Shigley was unreasonable under Strickland.

I.    Ground Thirteen:  "Petitioner was denied his U.S. Constitutional rights to effective assistance of counsel, equal protection, due process, and a fair trial by trial counsel's failure to question Ms. Shigley on what the Petitioner was wearing when he allegedly confronted her and shot her."

Ground Fourteen:  "Petitioner was denied his U.S. Constitutional rights to effective assistance of counsel, equal protection, due process, and a fair trial by trial counsel's failure to question Ms. Shigley on which hand Petitioner was holding the gun when he allegedly shot her."

Petitioner asserts defense counsel should have questioned Ms. Shigley regarding what he was wearing when he shot her and in which hand he held the gun (doc. 1 at 19–22).  Petitioner asserts

counsel knew from Ms. Shigley's deposition that she could not describe what the shooter was wearing or state in which hand he held the gun (*id.*).  He asserts counsel's questioning her about these subjects would have caused the jury to have reasonable doubt about her credibility, because she was able to recall other details of the shooting, for example, that the back door had been kicked in, motion detector lights went on, she and Petitioner spoke, she was shot, Petitioner followed her out of the house and stood over her while she was lying on the ground, Petitioner spoke to her again, he fired two shots in the air, and he walked to his vehicle (*id.*).

Petitioner raised these claims as Grounds XII and XIII in his Rule 3.850 motion (Ex. N at 22–26).  The state court determined that whether Ms. Shigley knew what Petitioner was wearing or in which hand he held the gun were of questionable, if any, significance, in light of Ms. Shigley's unequivocal identification of Petitioner as the shooter at the scene, during subsequent interviews, and at trial (*id.* at 73).  The court therefore concluded that Petitioner failed to demonstrate deficient performance or prejudice (*id.*).

Petitioner is not entitled to relief on these claims for the same reasons he was not entitled to relief on Grounds Eight through Twelve.  Defense counsel rigorously cross-examined Ms. Shigley and made every attempt to raise doubt in the jury's mind that Petitioner was the shooter (Ex. C at 332–91).  Further, defense counsel vehemently argued in closing that Ms. Shigley was mistaken as to the identity of her shooter (*id.* at 1236–70).  Defense counsel performed very competently in his cross-examination of Ms. Shigley.  Further, as discussed *supra*, there is no reasonable probability the jury would have acquitted Petitioner had defense counsel nit-picked Ms. Shigley's testimony or questioned her about Petitioner's clothing or the hand in which he held the gun.  Therefore, Petitioner failed to demonstrate that the state court's denial of his claims was unreasonable under Strickland.

J.     Ground Fifteen:  "Petitioner was denied his U.S. Constitutional rights to effective assistance of counsel, equal protection, due process, and a fair trial by trial counsel's failure to request limiting jury instructions on *Williams Rule* evidence."

Ground Sixteen:  "Petitioner was denied his U.S. Constitutional rights to effective assistance of counsel, equal protection, due process, and a fair trial by trial counsel's failure to object to *Williams Rule* evidence becoming a feature of the trial."

Petitioner contends defense counsel was ineffective for failing to request a limiting jury instruction regarding "Williams rule" evidence presented at trial, and failing to object when that evidence became a "feature" at trial (doc. 1 at 22–25).[11]  Petitioner states this evidence included: (1) Ms. Shigley's testimony that one week prior to the shooting, Petitioner held her at gunpoint and threatened to kill her, (2) Ms. Shigley's testimony that during the two-month period between their break-up and the shooting, Petitioner followed her, (3) Ms. Shigley's testimony that after their break-up, Petitioner appeared at her home and knocked on and rattled doors, and (4) testimony from Ms. Shigley and others as to Petitioner's statements suggesting he was watching and following her and inquiring as to whom she was dating (id.).

Petitioner raised these claims as Grounds XIV and XV in his Rule 3.850 motion (Ex. N at 26–30).  The state court concluded that, in light of the totality of the evidence adduced at trial,  the "Williams rule" evidence did not become a "feature" at trial; therefore, Petitioner was not prejudiced by counsel's failure to object to its becoming a feature of trial (id. at 73–74).  The court further concluded Petitioner was not prejudiced by counsel's failure to request a limiting instruction (id.).

With regard to defense counsel's failure to argue that the "Williams rule" evidence had improperly become a feature of trial, Petitioner failed to show prejudice.  The state court concluded that the evidence did not become a feature of the trial; therefore, any objection by counsel would have been overruled.[12]

The same is true with regard to Petitioner's claim that counsel was ineffective for failing to request a limiting instruction.  Under Florida law, a defendant is entitled to a cautionary instruction when evidence of other crimes, wrongs, or acts ("Williams rule" evidence) is introduced under Fla. Stat. § 90.404(2).  However, evidence that demonstrates a defendant's motive for committing the offense and is inextricably intertwined with it is not true "Williams rule" evidence.  See Griffin v.

---

[11] Williams v. State, 110 So. 2d 654 (Fla. 1959).  Under the Williams rule, evidence of other crimes, wrongs and acts is admissible if it is relevant to and probative of a material issue even though the evidence may indicate the accused has committed other uncharged crimes or may otherwise reflect adversely upon the accused's character. Section 90.404(2)(a), Florida Statutes, (1983), codifies the ruling in Williams and lists the purposes for which such evidence is deemed to be admissible:  proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  Buenoano v. State, 527 So. 2d 194, 197 (Fla. 1988).

[12] The same judge presided over Petitioner's trial and the post-conviction proceedings.

Case No. 3:09cv490/RV/EMT

State, 639 So.2d 966, 968 (Fla. 1994) ("[E]vidence of uncharged crimes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged, is not Williams rule evidence.").   The evidence of Petitioner's holding the victim at gunpoint and threatening to kill her two weeks prior to the charged offenses, and his stalking behavior during the two-month period prior to the offenses, including attempting to find out whether she was dating another man, was admissible under Fla. Stat. § 90.402, because it was a relevant and inseparable part of the acts at issue, that is, Petitioner's breaking into the victim's home and shooting her.  The prior threat and stalking demonstrated motive and premeditation and was necessary to adequately describe the events leading up to the attempted premeditated murder with a firearm and burglary of a dwelling while armed, and thus were inextricably intertwined with the offenses.  See Floyd v. State, 18 So. 3d 432, 448 (Fla. 2009) (defendant's threat to kill his wife or someone she loved as reprisal for her drinking or if she ever attempted to run or hide from him was admissible in capital murder prosecution arising from shooting of defendant's mother-in-law as a relevant and inseparable part of the act which was at issue; threat demonstrated motive behind murder and was inextricably intertwined with it); Da Silva v. State, 966 So. 2d 1013, 1015 (Fla. 4th DCA 2007) (evidence that defendant fired revolver and kidnapped victim's friend, who refused to give victim's location to defendant after defendant's romantic relationship with victim ended, two months after victim was shot and killed with same type of revolver, was admissible as relevant evidence under § 90.402, rather than "Williams rule" evidence, because central meaning of evidence was to show relationship among persons involved and to tie use of firearm used in killing the victim to defendant; indeed killing of victim was almost incomprehensible without whole extent of evidence described above).  Because the evidence of Petitioner's prior threat and stalking was not true "Williams rule" evidence, Petitioner was not entitled to a limiting instruction.  Therefore, Petitioner failed to show deficient performance or prejudice with respect to defense counsel's failure to request the instruction.

Moreover, even if the evidence was true "Williams rule" evidence, Petitioner failed to show a reasonable probability of acquittal had the jury been instructed that they could consider evidence of the prior threat and stalking only as it related to Petitioner's motive and intent, and that Petitioner was not on trial for those acts.  See The Florida Bar, Fla. Standard July Instructions in Criminal Cases, Part One, Section 2.4, Evidence of Other Crimes, Wrongs, or Act "Williams Rule"

§ 90.404(2)(a), Fla. Stat. (adopted 1981, amended 2000).[13]  In light of all of the evidence presented to the jury, including the victim's unequivocal identification of Petitioner as the shooter, the neighbor's testimony that he saw a vehicle similar to Petitioner's leaving the scene, the evidence suggesting Petitioner fled the night of the shooting, the evidence that Petitioner possessed a semiautomatic pistol prior to the shooting, the forensic evidence of tire track and shoe prints found at the scene which were similar to Petitioner's tires and shoes, and the forensic evidence of glass found in Petitioner's shoes and shirt that was similar to glass collected at the scene, Petitioner failed to show he was prejudiced by counsel's failure to request the limiting instruction.

Based upon the foregoing, Petitioner failed to establish that the state court's adjudication of Grounds Fifteen and Sixteen was an unreasonable application of Strickland.

K.    Ground Eighteen:  "Petitioner was denied his U.S. Constitutional rights to effective assistance of counsel, equal protection, due process, and a fair trial by trial counsel's failure to investigate and call a firearm expert on behalf of the defense."

Petitioner contends defense counsel should have utilized a firearm expert to testify to the following:  (1) if Petitioner was the shooter, he would have had gunpowder residue on his skin and clothing; (2) gunpowder residue may not simply be washed or wiped off skin or clothing; (3) gunpowder residue may be removed only with a "thorough cleansing," which often requires a solvent, especially after a firearm has been discharged approximately ten times, as was alleged in this case; (4) if Petitioner had shot a gun ten times and then sat in his vehicle, there would have been gunpowder residue in the vehicle; and (5) it would be virtually impossible for Petitioner's clothing not to have gunpowder residue, which it did not, if he had fired the gun ten times (doc. 1 at 28).

---

[13] The instruction reads:

The evidence you are about to receive concerning evidence of other crimes, wrongs, or acts allegedly committed by the defendant will be considered by you for the limited purpose of proving [motive] [opportunity] [intent] [preparation] [plan] [knowledge] [identity] [the absence of mistake or accident] on the part of the defendant and you shall consider it only as it relates to [that] [those] issue[s].

However, the defendant is not on trial for a crime, wrong, or act that is not included in the [information] [indictment].

Id.

Petitioner raised this claim as Ground XIX in his Rule 3.850 motion (Ex. N at 36–37).  The state circuit court found as fact that the State's firearms expert testified that no gunshot residue was found on Petitioner's person (*id.* at 76).  The court also found that evidence of the lack of gunpowder residue was not particularly compelling in light of the uncontroverted evidence at trial that Petitioner was not contacted by law enforcement until hours after the shooting (*id.*).  The court further found that defense counsel thoroughly cross-examined the State's expert regarding his testing procedures and the value of the information gathered (*id.*).  Lastly, the court found that Petitioner's claim was based purely on speculation; he pointed to no specific expert who would testify in the manner in which he described (*id.*).

As previously noted, complaints of ineffective assistance of counsel based upon counsel's failure to call certain witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.  *See* Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).  "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision" that seldom, if ever, serves as grounds to find counsel's assistance ineffective.  Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004).  "[T]he mere fact a defendant can find, years after the fact, [an] . . . expert who will testify favorably for him does not demonstrate that counsel was ineffective for failing to produce that expert at trial."  Davis v. Singletary, 119 F.3d 1471, 1475 (11th Cir. 1997) (counsel was not ineffective for failing to call a mental health expert to testify).  This is especially true when reviewing a state court's finding that counsel was not ineffective for failing to call such an expert to testify.  *See* Harvey v. Warden, Union Correctional Institution, 629 F.3d 1228, 1262–63 (11th Cir. 2011) (emphasizing the deference afforded the state court in determining whether counsel was deficient in failing to call a particular expert).

In this case, Petitioner failed to provide any evidence, in the form of an affidavit or otherwise, that a firearms expert would have testified as Petitioner describes.  Indeed, the fact that a firearms expert testified at trial that wiping or washing hands, touching of objects, or putting hands in pockets can remove gunshot residue (*see* Ex. C at 668–74, 679, 683) undermines Petitioner's speculation that a firearms expert would have testified to the contrary.  Additionally, expert testimony regarding the absence of residue on the clothing Petitioner was wearing when he was

found by law enforcement would have had minimal value to the defense, because there was no evidence as to the clothing Petitioner was wearing at the time of the shooting, nearly two hours elapsed between the time of the shooting and the time Petitioner was found by law enforcement, and Petitioner's fingers were swabbed for testing nearly four hours after the shooting (Ex. C at 216–18, 230–35, 613–14, 673).  Petitioner therefore failed to show that counsel's failure to call a firearms expert was unreasonable, and that he was prejudiced by the alleged error.  Consequently, the state court's denial of this ineffective assistance of counsel claim was not an unreasonable application of Strickland.

      L.      Ground Nineteen:  "Petitioner was denied his U.S. Constitutional rights to effective assistance of counsel, equal protection, due process, and a fair trial by trial counsel's calling a witness to contradict the alibi defense presented at trial."

Petitioner contends defense counsel sabotaged his alibi defense by calling William Reid as a witness (doc. 1 at 29).  He contends defense counsel presented testimony of two alibi witnesses, Michelle Johnson and Brian Hurd, who testified they were with Petitioner from approximately 8:00 p.m. to midnight on the night of the shooting, which occurred at approximately 11:40–11:45 p.m. (*id.*).  Petitioner argues defense counsel then destroyed the credibility of the alibi defense by calling William Reid to testify that he was also with Petitioner on the night of the crime, but they parted ways at approximately 11:00 p.m. (*id.*).

Petitioner raised this claim as Ground XX in his Rule 3.850 motion (Ex. N at 38–39).  The state circuit court adjudicated the claim as follows:

> Mr. Reid was listed by the State as a rebuttal witness to Defendant's alibi.  Indeed, defense counsel noted during his opening statement, speaking of Mr. Reid, "[Y]ou're probably going to hear from him from the State's side."  However, when called by the defense, Mr. Reid indicated that he previously thought that Mr. Files and he had walked to Seville together (in contradiction to Defendant's alibi witnesses), but that upon further reflection, he realized that he had left alone around 11 p.m., and that he knew that because he recalled that he was at home alone between 11:40 and 11:50 p.m.  It is clear that the defense expected Mr. Reid to be called by the State in rebuttal to Defendant's alibi witnesses.  However, in calling Mr. Reid to essentially attempt to recant his earlier statements, the defense was attempting to lessen the impact of Mr. Reid's testimony, or, as opined by the state attorney [during closing argument], attempting to "backtrack" by providing a way to reconcile Mr. Reid's testimony with that of the other defense witnesses, "to try to

get this all together and hopefully give him an alibi."  While it may not have had the intended result, it cannot be said that counsel's tactic was inappropriate or deficient.

(Ex. N at 77) (footnotes omitted).

Whether a particular decision by counsel was a tactical one is a question of fact, <u>Hardwick v. Crosby</u>, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness.  *See* 28 U.S.C. § 2254(e)(1); <u>Jackson v. Herring</u>, 42 F.3d 1350, 1367 (11th Cir. 1995); <u>Horton v. Zant</u>, 941 F.2d 1449, 1462 (11th Cir. 1991). Whether a particular tactical decision was a reasonable one, however, is a question of law, <u>Hardwick</u> 320 F.3d at 1163; <u>Jackson</u>, 42 F.3d at 1367; <u>Horton</u>, 941 F.2d at 1462.  In determining whether counsel's decision was reasonable, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  <u>Strickland</u>, 466 U.S. at 689.

In the instant case, it was reasonable for defense counsel to attempt to lessen the potential damaging effect of Mr. Reid's rebuttal testimony by calling him as a witness for the defense and eliciting testimony that explained any inconsistency with the testimony of the two alibi witnesses. Therefore, the state court's conclusion, that Petitioner failed to show deficient performance by defense counsel, was not an unreasonable application of <u>Strickland</u>.

L.    <u>Ground Twenty:  "Petitioner was denied his U.S. Constitutional rights to effective assistance of counsel, equal protection, due process, and a fair trial by trial counsel's failure to move to dismiss count two as being vague and/or indefinite."</u>

Petitioner contends defense counsel should have moved to dismiss Count II on the ground that the information was legally insufficient (doc. 1 at 30–31).  Count II charged that Petitioner unlawfully entered a dwelling with the intent to commit "battery and/or other criminal offense" therein (Ex. B at 1).  Petitioner contends this language was "vague and/or indefinite" and denied him the ability to prepare a defense (doc. 1 at 30–31).  He additionally contends counsel should have objected to Count II on double jeopardy grounds, because the offense of battery is a lesser included offense of attempted murder charged in Count I, and the conduct underlying Counts I and II occurred during a single criminal episode (*id.*).  Next, Petitioner contends the "or other criminal offense" language combined with the "<u>Williams</u> rule" evidence permitted the jury to convict based upon the uncharged conduct of his holding the victim at gunpoint two weeks prior (*id.*).

Petitioner raised this claim as Ground XXI in his Rule 3.850 motion (Ex. N at 39–41).  With regard to Petitioner's contention that the "battery and/or other criminal offense" language was too vague and indefinite to enable him to prepare a defense, the state court held that to properly charge burglary under Florida law, the charging document "'must allege that the entry was made with the intention of committing an offense therein.  It is not necessary to allege the specific crime intended. Whether a specific crime is charged or not, the specific crime intended need not be proven.'" (*id.* at 78 (quoting Duncan v. State, 606 So. 2d 1227, 1228 (Fla. 4th DCA 1992))).

In light of the state court's determination that defense counsel had no meritorious basis for arguing that the information was subject to dismissal as vague or indefinite, Petitioner failed  to show deficient performance or prejudice.  Additionally, even if counsel had successfully argued that Count II failed to inform the defense of the particulars of the offense sufficiently to enable him to prepare a defense, the appropriate remedy under Florida law would have been an order directing the State to file a statement of particulars, or the State could have filed an amended information.  Fla. R. Crim. P. 3.140(d), (n).  Therefore, Petitioner failed to show prejudice.

With regard to the second alleged defect, that the information subjected him to double jeopardy by charging him with attempted murder and "the lesser included charge of battery," the state court determined the claim was without merit because Petitioner was not charged with battery or "any other criminal offense" in Count II; rather, he was charged with armed burglary of a dwelling (Ex. N at 78).  The state court held that under Florida law, to convict an individual of burglary of a dwelling, there must be a unauthorized entry into or remaining in the dwelling with an intent to commit a crime therein, not actual commission of the crime  (*id.* (citing Fla. Stat. § 810.02(2))).  The court thus concluded double jeopardy was not implicated (*id.*).

It is clear from the Florida statutes that the Florida Legislature expressly intended to convict and sentence a defendant for each offense he commits during the course of a single criminal episode, with three exceptions to that rule:  (1) offenses which require identical elements of proof; (2) offenses which are degrees of the same offense as provided by statute, and (3) offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.  Fla. Stat. § 775.021(4)(b)1–3.  These exceptions adopt the double jeopardy standard set forth by the Supreme

Court in <u>Blockburger v. United States</u>, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).  *See* <u>State v. Weller</u>, 590 So. 2d 923, 925 (1991).

Petitioner failed to show that the offenses in the instant case satisfied the first exception. Attempted murder requires an intent to kill, which is not an element of burglary.  Burglary requires unauthorized entry, which is not an element of attempted murder.  Therefore, there is no double jeopardy violation based upon § 775.021(4)(b)1.  Furthermore, the second exception is not satisfied, because attempted murder and burglary are not degrees of the other.  Moreover, according to the tables of lesser included offenses included with each individual jury instruction, the third exception is not satisfied because attempted murder is not a lesser included offense of burglary, and burglary is not a lesser included offense of attempted murder.  Therefore, Petitioner failed to show a meritorious basis for counsel's seeking dismissal of Count II on double jeopardy grounds.

With regard to Petitioner's final argument, that the jury was misled to believe it could convict him of burglary based upon evidence that Petitioner held the victim at gunpoint on a prior occasion, the state court rejected the argument on the ground that the jury instructions made clear to the jury that Petitioner could be found guilty only if he had the intent to commit a criminal offense <u>at the time of the burglary</u> (Ex. N. at 78–79).  The court further determined that Petitioner's theory that the jury improperly relied on the "<u>Williams</u> rule" evidence was based purely on speculation (*id.* at 79).

The jury instructions are included in the record (Ex. B at 57–67).  The burglary instruction expressly instructed the jury that to prove the crime of burglary, the State must prove beyond a reasonable doubt that (1) Petitioner entered a structure owned by Sandy Shigley, (2) <u>Petitioner did not have permission to enter the structure at that time</u>, and (3) <u>at the time of entering the structure</u> Petitioner had a conscious intent to commit the offense of battery and/or another criminal offense against Ms. Shigley in that structure (*id.* at 60–61).  The jury could not have convicted Petitioner based upon the prior incident, because the evidence showed he had Ms. Shigley's permission to enter the house on that occasion (Ex. C at 287–95, 360, 368).  Further, on the occasion when he did <u>not</u> have permission to enter, the jury was clearly instructed there must be evidence that he intended to commit a crime <u>at the time of that entry</u>.  In light of the specific jury instruction, the presumption that a jury follows the instructions given to it by the trial judge, *see* <u>United States v. Townsend</u>, 630

F.3d 1003, 1014 (11th Cir. 2011), and the absence of any evidence suggesting the jury was misled to believe they could convict Petitioner based upon his prior conduct, Petitioner has failed to show that the state court's rejection of his ineffective assistance of counsel claim was unreasonable.

> M.    Ground Twenty-one:   "Petitioner was denied his U.S. Constitutional rights to effective assistance of counsel, equal protection, due process, and a fair trial by trial counsel's failure to object to confusing or misleading jury instructions."

In this claim, Petitioner repeats two of the arguments he made in Ground Twenty concerning double jeopardy and jury confusion, except he relates them to certain jury instructions (doc. 1 at 31–32).  He contends the burglary instruction permitted the jury to convict him based upon the prior act of holding Ms. Shigley at gunpoint (*id.*).  He additionally contends the instruction permitted the jury to violate double jeopardy principles by convicting him of attempted murder and the lesser included offense of battery, both of which occurred during a single criminal episode (*id.*).  He also contends the instruction on aggravation of a felony by discharging a firearm and causing great bodily harm was confusing due to the "and/or" conjunctions included therein (*id.*).[14]

Petitioner raised this claim as Ground XXII in his Rule 3.850 motion (Ex. N at 41–43).  The state circuit court found that Petitioner's claim was based strictly on conjecture with regard to any potential confusion on the part of the jury (*id.* at 79).  The court concluded Petitioner failed to demonstrate deficient performance or prejudice (*id.*).

For the reasons discussed *supra*, defense counsel had no good faith basis to argue a double jeopardy violation or jury confusion with respect to the burglary instruction.  Further, the instruction on aggravation of a felony by discharging a firearm and causing great bodily harm was clear, and

---

[14] This instruction read as follows:

If you find that Jeffrey Carl Files committed Attempted First Degree Premeditated Murder and/or Burglary or other designated lesser included offense and you also find that during the commission of the crime the defendant discharged a firearm and caused great bodily harm to Sandy K. Shigley, you should find the defendant guilty of Attempted First Degree Premeditated Murder and/or Burglary or other designated lesser included offense while discharging a firearm and causing great bodily harm.

If you find only that the defendant committed Attempted First Degree Premeditated Murder and/or Burglary or a lesser included offense but *did not* discharge a firearm and cause great bodily harm, then you should find the defendant guilty only of Attempted First Degree Premeditated Murder and/or Burglary or such other lesser included offense.

(Ex. B at 64).

any confusion was dispelled by the verdict form (Ex. B at 68–71).  Moreover, as with Ground Twenty, Petitioner submitted no evidence suggesting the jury was confused by either of the jury instructions at issue.  Therefore, Petitioner failed to demonstrate that the state court unreasonably applied <u>Strickland</u> in denying his claim.

> N.     <u>Ground Twenty-two:  "Petitioner was denied his U.S. Constitutional rights to effective assistance of counsel, equal protection, due process, and a fair trial by trial counsel's failure to object to the State's case, along with a finding of guilt that was based on the improper stacking of inference upon inference."</u>

Petitioner contends Florida law prohibits a conviction based upon "pyramiding of inferences," that is, "when at least two inferences in regard to the existence of a criminal act must be drawn from the evidence and then stacked to prove the crime charged" (doc. 1 at 32–33).  He contends the circumstantial evidence presented at trial was insufficient to support his convictions without "stacking of inferences" from (1) the neighbor's report of seeing a "small SUV, like a Jeep," (2) the tire track evidence, (3) the shoe print evidence, and (4) the evidence of glass fragments on his clothing and shoes (*id.*).  Therefore, counsel should have objected and sought dismissal of the charges on this ground (*id.*).

Petitioner raised this claim as a supplemental claim in his Rule 3.850 motion (Ex. N at 58–59).  The state circuit court determined that Florida's prohibition against a conviction based upon pyramiding of inferences was not violated in Petitioner's case (*id.* at 79–80).  The court determined that the circumstantial evidence of which Petitioner complained was just that, circumstantial evidence (*id.* at 80).  Additionally, Ms. Shigley's testimony, alone, unequivocally identifying Petitioner as the person who entered her home without permission and shot her, was sufficient to deny any motion for judgment of acquittal (*id.*).  Therefore, the state court concluded Petitioner failed to show deficient performance by counsel or prejudice (*id.*).

In light of the state court's determination that defense counsel had no basis for arguing a violation of state law, a determination to which this court must defer, Petitioner failed to show deficient performance based upon counsel's failure to argue that an impermissible stacking of inferences occurred.  Additionally, the victim's testimony was direct evidence that established each element of the crimes; the circumstantial evidence merely supported her testimony.  Therefore,

Petitioner failed to demonstrate that the state court's adjudication of the claim was an unreasonable application of <u>Strickland</u>.

       O.    <u>Ground Twenty-three</u>:  "Petitioner was denied his U.S. Constitutional rights to effective assistance of counsel, equal protection, due process, and a fair trial due to the cumulative effect of the grounds raised herein."

Petitioner contends the cumulative effect of the grounds raised *supra* denied him his constitutional rights (doc. 1 at 33–34). He states he raised this claim in his Rule 3.850 motion (*id.* at 34).

In Ground XXIII of Petitioner's Rule 3.850 motion, he argued that the cumulative effect of defense counsel's errors amounted to ineffective assistance of counsel in violation of his constitutional rights (Ex. N at 43). The state circuit court denied the claim on the ground that Petitioner's individual claims had no basis for relief; therefore, his claim of cumulative error failed (*id.* at 79).

The Supreme Court has not recognized the cumulative error doctrine in the context of ineffective assistance of counsel claims.[15] Although the Eleventh Circuit has noted, on direct appeal of a federal conviction, that the cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial may be necessary,[16] the Eleventh Circuit has never expressly recognized a freestanding "cumulative effect" claim, based upon the assertion that alleged errors of the trial court, defense counsel, or the State, or a combination thereof, rendered the trial fundamentally unfair even though such errors were individually harmless or non-prejudicial, as cognizable under § 2254. *See, e.g.,* <u>Conklin v. Schofield</u>, 366 F.3d 1191, 1210 (11th Cir. 2004) (applying pre-AEDPA standard of review and

---

[15] The Eleventh Circuit noted "the absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel." <u>Forrest v. Fla. Dep't of Corr.</u>, 2009 WL 2568185, at *4 (11th Cir. Aug. 21, 2009) (unpublished). The court cautioned that the Supreme Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 5 (quoting <u>United States v. Cronic</u>, 466 U.S. 648, 659 n.26, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)).

[16] *See* <u>United States v. Ramirez</u>, 426 F.3d 1344, 1353 (11th Cir. 2005) ("[T]he 'cumulative effect' of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible.") (quoting <u>United States v. Thomas</u>, 62 F.3d 1332, 1343 (11th Cir.1995)), <u>United States v. Adams</u>, 74 F.3d 1093, 1099–1100 (11th Cir. 1996) (citing <u>United States v. Preciado-Cordobas</u>, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993)).

denying claim that trial court errors and conduct of trial counsel combined to rob petitioner of fair trial and sentencing, but not relying upon Supreme Court precedent for its decision); <u>Sims v. Singletary</u>, 155 F.3d 1297 (11th Cir. 1998) (applying pre-AEDPA standard of review and holding that district court erred in finding that cumulative guilt stage errors prejudiced petitioner during penalty phase); <u>Cargill v. Turpin</u>, 120 F.3d 1366, 1386 (11th Cir. 1997) (applying pre-AEDPA standard of review and declining petitioner's invitation to entertain "cumulative error" claim because petitioner's trial was not fundamentally unfair); <u>Dobbs v. Kemp</u>, 790 F.2d 1400, 1505 (11th Cir. 1986) (applying pre-AEDPA standard of review and denying petitioner's claim that improper prosecutorial argument and evidentiary errors rendered trial fundamentally unfair and citing <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1973)); <u>Bronstein v. Wainwright</u>, 646 F.2d 1048, 1056 (5th Cir. 1981) (same).[17]

In any event, cumulative error analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors. *See* <u>United States v. Waldon</u>, 363 F.3d 1103, 1110 (11th Cir. 2004) (where no individual errors have been demonstrated, no cumulative errors can exist); <u>United States v. Barshov</u>, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); <u>Mullen v. Blackburn</u>, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting

---

[17] The law of the other circuit courts of appeals is mixed on the issue of whether a claim of "cumulative effect" or "cumulative error" is cognizable on federal habeas. The Fourth, Sixth and Eighth Circuits do not recognize cumulative error claims on federal habeas. *See* <u>Williams v. Anderson</u>, 460 F.3d 789, 816 (6th Cir. 2006) (claims of cumulative error are not cognizable on federal habeas because the Supreme Court has not spoken on this issue); <u>Fisher v. Angelone</u>, 163 F.3d 835, 852–53 (4th Cir. 1998) (ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively); <u>Wainwright v. Lockhart</u>, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief."). The Ninth Circuit recognizes cumulative error claims and expressly recognized <u>Chambers v. Mississippi</u>, 410 U.S. 284 (1973) as the clearly established federal law governing such claims. *See* <u>Parle v. Runnels</u>, 505 F.3d 922, 928–29 (9th Cir. 2007). The Tenth Circuit recognizes cumulative error claims and recognized <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993) as the clearly established federal law on this issue. *See* <u>Darks v. Mullin</u>, 327 F.3d 1001, 1018 (10th Cir. 2003). The Second and Seventh Circuits recognize cumulative effect analysis of individual claims of ineffective assistance of counsel in applying the prejudice prong of <u>Strickland</u>. *See* <u>Williams v. Washington</u>, 59 F.3d 673, 682–84 (7th Cir. 1995); <u>Rodriguez v. Hoke</u>, 928 F.2d 534 (2d Cir. 1991).

more and has nothing else to recommend it.  Twenty times zero equals zero."); *see also* United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006); Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002) (where there is no single constitutional error, nothing can accumulate to the level of a constitutional violation); United States v. Hardy, 224 F.3d 752, 757 (8th Cir. 2000); Angelone, *supra*; Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998); United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."); United States v. Conteh, 234 Fed. Appx. 374, 2007 WL 1229043 (6th Cir. 2007).  Thus, Petitioner must show error with respect to at least two of his individual claims.

As previously discussed, none of the alleged errors of trial counsel, considered alone, approaches the threshold standard of ineffective assistance of counsel.  Taken together, their cumulative effect also falls far short of depriving Petitioner of effective assistance of counsel or a fundamentally fair trial.  Furthermore, the remaining claim (Ground One) was procedurally barred. Therefore, Petitioner is not entitled to federal habeas relief on this "cumulative error" claim.  *See* Bronstein v. Wainwright, 646 F.2d 1048 (11th Cir. 1981) ("[A] state trial must be so 'fundamentally unfair' as to amount to a denial of due process before federal habeas relief can be appropriately applied.") (internal quotation and citation omitted)); *see* Ballard v. McNeil, 785 F. Supp. 2d 1299, 1335–37 (N.D. Fla. 2011); *see also* Rasley v. Buss, No. 5:08cv368/RH/EMT, 2011 WL 2358650, at *32–32 (N.D. Fla. Apr. 11, 2011) (unpublished), *Report and Recommendation Adopted at* 2011 WL 2293383 (N.D. Fla. June 9, 2011); Whitfield v. McNeil, No. 5:07cv120/RS/EMT, 2010 WL 1930007, at *22–23 (N.D. Fla. Apr. 12, 2010) (unpublished), *Report and Recommendation Adopted at* 2010 WL 1930012 (N.D. Fla. May 13, 2010); Walls v. McNeil, No. 3:06cv237/MCR/EMT, 2009 WL 3187066, at **30–31 (N.D. Fla. Sept. 30, 2009) (unpublished).

VI.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Kenneth S. Tucker is substituted for Walter A. McNeil as Respondent.

And it is respectfully **RECOMMENDED**:

1.  That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.  That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 9th day of December 2011.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**